407 So.2d 42 (1981)
DON SIEBARTH PONTIAC, INC., Plaintiff-Appellee,
v.
ASPHALT ROAD BUILDING AND RESURFACING, INC., Defendant-Appellant.
No. 8469.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearing Denied January 4, 1982.
*43 Brame, Bergstedt & Brame, Joseph A. Brame, Lake Charles, for defendant and plaintiff in reconvention-appellant.
James L. Babin, Lake Charles, for plaintiff and defendant in reconvention-appellee.
Woodley, Barnett, Cox, Williams & Fenet, Robert W. Fenet, Lake Charles, for intervenor-appellee.
Before CULPEPPER, CUTRER and LABORDE, JJ.
LABORDE, Judge.
This is a breach of contract case allegedly resulting from improper workmanship in the laying of asphalt roads, parking lots and other surfaces at an automobile dealership located in Calcasieu Parish, Louisiana.
Plaintiff, Don Siebarth Pontiac, Inc., seeks damages representing the cost of remedying a defective asphalt job constructed under contract by the defendant, Asphalt Road Building and Resurfacing, Inc. Defendant reconvened for the unpaid amount of its contract price for work it performed. R. E. Heidt Construction Company, Inc., intervened to secure payment for hot mix asphalt it sold to defendant for use in the job. The asphalt sale was secured by a lien.
*44 The trial court determined that the work was performed in an unworkmanlike manner, awarding plaintiff the amount necessary to completely repair it. This amount was off set by certain authorized extras performed by defendant and judgment was rendered accordingly. In addition, the court recognized intervenor's lien and awarded intervenor the amount of its lien plus attorney's fees for preparing it and cost for filing it.[1]
Defendant's motion for a new trial was denied following which it appealed to this court claiming that the trial court erroneously allowed plaintiff any recovery when the undisputed evidence established that the problems resulted from failures in the sub-base which was neither prepared nor warranted by it; that the trial court erroneously accepted the estimate presented by plaintiff's expert without giving consideration to the doctrine of mitigation of damages; that the trial court erroneously failed to award it certain items listed in its reconventional demand; and that the trial court rendered a judgment defective in form. With none of these arguments do we agree.
The trial judge in well considered and well articulated oral reasons for judgment stated:
"THE COURT: Thank you, gentlemen. In this suit the plaintiff seeks to recover damages from the defendant allegedly resulting from improper workmanship in the laying of asphalt roads and other surfaces at its automobile dealership location in Calcasieu Parish. The agreement between the parties leaves much to be desired. The area was "walked over" by Mr. Siebarth and Mr. Broussard, who represented the defendant, along with a Mr. Ripley, to whom the work was subcontracted. Rough sketches with measurements of the area were made, and the agreement, to some extent, was reduced to writing on speedletter forms introduced in evidence as P-5. Shortly before the work was completed, failures appeared in some portions of the asphalt surface which were caused by sub-grade or sub-surface failures. There is a serious dispute as to whether the builder was responsible for these. The agreement contained a provision for some soil cement work behind the mechanic shop, but this was not done by consent of the parties. There were a number of items deleted by agreement, and it appears that some work was done by the subcontractor which Mr. Siebarth contends he did not authorize. There is a serious dispute as to the plaintiff's obligation to pay for this extra work. There was no agreement for the contractor or sub-contractor to perform any drainage work or work on the sub-grade. However, the Court believes that a builder is obliged to construct work that is suited for its intended purpose which in this case was to lay asphalt on a suitable base so that there would be a minimum of failures on the asphalt surface. Where the builder fails to point out to the owner, which was the case here, that the base is not suitable, and a failure results, in the Court's opinion the builder is responsible therefor. Not only did this builder fail to point out that the base would be unsuitable in any particular location, he actually thought the base was suitable for the application of a two inch hot mix which would provide the necessary hard surface for the automobile dealership, and he told this to the plaintiff. Consequently, the Court concludes the defendant is responsible for the failures that occurred in this instance. There was some dispute of some testimony to the effect that the defendant and the subcontractor did not know that there were certain electric and water lines already installed under the area to be hard surfaced, and that their location caused some of the failures. However, the Court is of the opinion it was the duty of the builder to ascertain whether any were there and their location. The mere fact that he was not aware of their presence does not relieve him of his responsibility. Consequently, the Court concludes that the plaintiff has suffered damages, and *45 that it is entitled to an award of $25,000.00 which is the sum that Mr. Fenet of R. E. Heidt Construction Company testified would be the price of correcting the failures and placing the hard surface in a proper condition. Generally, a party who has sustained damages by reason or fault of another is obliged to minimize his damages. There was some testimony by defendant's experts that the failures could have been patched for a much lessor sum at some time after this job was completed. However, the Court believes and accepts Mr. Fenet's testimony that the most satisfactory method of removing the failures was to re-surface the whole area, and it does not appear that this would have been done a great deal cheaper in early 1977 than now. The defendant is entitled to credit for certain extra work and extra asphalt that it supplied in connection with this job. These credits are as follows: Invoice No. 781$676.80; Invoice No. 782$1,725.00; Invoice No. 783 $3,150.00; Invoice No. 784$4,860.00. I am going to give credit for Invoice No. 788 in spite of the fact that it does not seem to have been included in defendant's computation of the total area to which the two inch hot mix was applied, it is inconceivable to me that that portion between the two buildings was not contemplated to be hard surfaced in the original agreement. It certainly is well within all red lines shown on the sketches that were a part of the agreement. The next credit will be one-half of Invoice No. 792 amounting to $740.00. I haven't added those up, but they will be deducted from the total sum of $25,000.00 and judgment will be rendered herein favor of the plaintiff and against the defendant for the resulting figure. In addition, there will be judgment herein on the petition of intervention filed by R. D. Heidt Construction Company in favor of intervenor and against the plaintiff and the defendant, in solido, in the sum of $2,940.60, plus the sum of $25.00 attorney's fees for preparing and filing the lien, and $3.00 as the recording fee thereof. In addition, the plaintiff will be awarded reimbursement through judgment over against the defendant upon its payment of the judgment to the intervenor. Incidentally, both judgments will bear legal interest from judicial demand until paid, and the costs of the suit will be assessed to the defendant. A formal decree in accordance with the Court's reasons for judgment will be read and signed upon presentation."
We adopt as our own the opinion of the learned trial judge and affirm his judgment.
The record leaves no doubt that the defects complained ofconsisting mainly of breaks and cracks in the surface which filled with water and continued to grow into large potholesappeared within a very short time after application and developed into very serious defects. The expert witnesses on both sides agree that the cause of these problems was a failure in the sub-base or sub-surface as it is also referred to.
At the outset, we reject defendant's contention that it was not responsible for the failures in the sub-base because it did no work on the sub-base nor did it warrant the sub-base in any manner. As pointed out by the trial judge, a builder is obliged to construct work that is suited for its intended purpose. Stated another way, it is implicit in every building contract that the work will be performed in a good, workmanlike manner free from any defects in materials or workmanship. LSA-C.C. art. 2762. Furthermore, a contractor is liable when he should have known by the exercise of proper judgment that the condition at the site, other than a latent defect of soil, should be corrected before proceeding with the work and he fails to advise the owner in time to permit an adjustment. He is considered as having expert knowledge of such things and must bring them to the attention of the owners who have no knowledge of such affairs. Wetmore v. Blueridge, Inc., 391 So.2d 951 (La.App. 4th Cir. 1980); Unverzagt v. Young Builders, Inc., 207 So.2d 405 (La.App. 3rd Cir. 1967); and Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (1967).
*46 In our case, the record contains ample evidence showing that in the asphalt business, the contractor's responsibilities include responsibility for the site's sub-surface. For example, plaintiff's expert, Courtney Fenet, Jr., who has been in the asphalt business for twenty six years, testified that an asphalt job includes consideration of and responsibility for the sub-surface and any necessary work in preparing the sub-surface. Similar testimony was elicited from one of defendant's witnesses, Walter Loftin, who was accepted by the court as an expert in asphalt and asphalt contracting and application. The following exchange occurred during cross examination:
"Q. So it's your responsibility, don't you feel, to take whatever areas given you, figure out what you've got to do to make a good base and then charge the man appropriately.
A. Yes, sir. We write us our contract accordingly unless he wants to cut down on money and says, `I want you to put it on this base'. When he does that we make him sign a letter of release that we're not responsible for the sub-grade, the base or the asphalt.
Q. Saying you are not responsible.
A. Yes, sir...."
(Tr. 429)
The record also shows that Don Siebarth, the person who negotiated the asphalt contract on plaintiff's behalf, relied on defendant's expertise in the area of asphalt application. Mr. Siebarth testified that he met with John Broussard, president and owner of the defendant corporation, and walked the site with him explaining what he wanted. Mr. Siebarth stated that he was a car salesman and not a blacktop expert. Plaintiff's reliance on the contractor's expertise is also shown by the testimony of Harry Ripley, the subcontractor of defendant, who in explaining why the site was not soil cemented, testified:
"A. Well, at that time I talked to Mr. Siebarth about it. He said if I could save him some money to do it, and the road, the base was good, and it wouldn't have been no better after we soil cemented it because we would have broke into our sub-base. One time you break your top six inches around this part of the country, then you've got to go down into a sub-base. In the fall of the year, especially, with rains, if we would have broke that, then we would have had to go down into sub-base work. So, I figured it was best not to spend that twenty-one hundred dollars. Leave good enough alone, and that's why that wasn't spent.
Q. Did you discuss that with Mr. Siebarth?
A. Not exactly like I'm telling you, no but I did talk to him. I told him we wouldn't have to soil cement it, that I was going to save him some money. That was the words. I didn't discuss how come because we would have had to go into the sub-base, I mean, I'm a road builder. He's a car salesman, and I figured he wouldn't, maybe understand it.
Q. Yes, sir. Was he in accord with your suggestion?
A. I think so. He never stopped me or told me to do it. I think he agreed."
(Tr. 571-572)
Under these circumstances, defendant cannot escape liability for defective construction resulting in the cracked surface by claiming that it neither worked on the subbase nor warranted it in any manner.
We next consider defendant's contention that the trial court erroneously accepted the estimate presented by plaintiff's expert without giving consideration to the doctrine of mitigation of damages. Defendant presented this identical argument in its motion for new trial which was heard by Judge King.[2] In his reasons for judgment, Judge King stated:

*47 "Defendant moves for a new trial on two grounds. First, that the initial trial judge failed to take into account plaintiff's failure to minimize its damages ... see Louisiana Civil Code Article 2323 ... in connection with the award of damages on the plaintiff's claim against the defendant. The Court has carefully reviewed some 654 pages of trial transcript as well as very extensive personal notes left in the Court's file which were taken contemporaneously by Judge Swift when he tried the lawsuit. The Court has also had the benefit of the briefs and oral arguments of the counsel for each side in connection with the reargument. After reviewing the evidence the Court does not find that the trial judge manifestly erred in his conclusion to accept the testimony of Mr. Courtney Fenet, Jr. as to the most satisfactory method of removing the failures of the defendant to properly perform his contract. As stated by Judge Swift, at Page 344 of the transcript in Volume 2, `... however, the Court believes and accepts Mr. Fenet's testimony that the most satisfactory method of removing the failure was to resurface the whole area, and it does not appear this would have been done a great deal cheaper in early 1977 than now.' The initial trial Judge had the opportunity to observe the demeanor of the witnesses and to hear their testimony. There is adequate evidence in the record to support the trial judge's determination to believe Mr. Fenet's testimony as to the most satisfactory method of correcting the defendant's breach of the contract. Defendant further complains that the initial trial judge erred in making his award of damages by not taking into consideration the increased cost of that award because of plaintiff's failure to minimize it's damages. Louisiana Civil Code Article 1934 provides the measure of damages for breach of contract. An initial inquiry must always be directed at whether the trial court's award for the particular damages is a clear abuse of the trier of facts `much' discretion under Louisiana Civil Code Article 1934 in the award of damages. Reck v. Stevens, 373 So.2d 498 (La.App. 3rd Cir. 1979). After reviewing the record, the Court does not find that the initial trial judge abused his much discretion in the award of damages to the plaintiff. ..."
We fully agree with Judge King's review of and response to this argument of defendant's and adopt that portion of the judgment as our own.
Defendant next contends that the trial court erred in failing to award the total amount of its reconventional demand. We disagree. Although the trial court did not allow the total amount, he did go through individual invoices he denied and stated why he was denying them. After a careful review of this argument, we conclude that defendant has failed to show any abuse of the trial court's "much discretion" warranting reversal on appeal.
Finally, defendant claims the trial court should have rendered a separate judgment covering the total of its reconventional demand instead of rendering a single judgment for the difference in plaintiff's favor. We find this argument totally lacking in merit. Defendant cites to this court the "official revision comments" to LSA-C. C.P. art. 1038. That article, which allows the trial court to order a separate trial of the principal and incidental trial demands to render and sign separate judgments, has no application to this case where the principal and reconventional demands were tried in a single trial. This court finds no trial court error in the procedure which the initial trial judge chose to follow.
For the above reasons, the judgment of the lower court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] That portion of the judgment recognizing the lien was not appealed from and is now final.
[2] The trial was heard and the matter decided by District Judge G. William Swift who was subsequently sworn in as a judge on the Third Circuit Court of Appeal. The motion for new trial was decided by Judge Swift's successor, District Judge Charles S. King.